KONENKAMP, Justice.
[¶ 1.] Responding to an emergency, a volunteer firefighter speeding on his way to the fire station struck a vehicle crossing an intersection, injuring the plaintiff and his passenger. In the suit against the firefighter and his local fire district, plaintiff alleged that the firefighter’s conduct was willful, wanton, and reckless and that the fire department negligently trained the firefighter and inadequately equipped the firefighter’s vehicle. The circuit court dismissed the suit on summary judgment, ruling as a matter of law that there was insufficient evidence the firefighter and fire district acted willfully, wantonly, or recklessly under SDCL 20-9-4.1.
Background
[¶ 2.] Tim Bauman is a volunteer firefighter for the Chester Fire Department in the Chester Rural Fire Protection District. On the 4th of July in 2007, Bauman and his wife, Cheryl, were at a celebration in Wentworth, South Dakota. Cheryl is a volunteer first responder and an EMT. While at the celebration, Bauman received a page from Chester Fire directing him to *539 respond to a fire. They left the celebration in Bauman’s personal pickup. He activated his hazard lights and sped toward the fire hall. When Bauman was traveling south on Lake County Road 15, he came over a hill and saw a north-bound vehicle positioned to make a left turn where the road intersected with Horizon Heights Road. Cheryl also saw the vehicle and said, “Oh, no, don’t go, don’t go,” and then, “Oh, thank God, they’re not going to go.” But the driver, Areyman Gabriel, then proceeded into the intersection. Bauman later explained that although he slowed his vehicle near the intersection, at which he had the right of way, Gabriel’s northbound vehicle turned directly in front of him. Bauman slammed on his brakes, but could not avoid the collision. Both Gabriel and his passenger, Mandi Gronseth, were injured.
[¶ 3.] Gronseth brought suit against Bauman and Chester Fire in the United States District Court for the District of South Dakota. She alleged that Bauman was negligent, which negligence proximately caused her injuries. She further claimed that Chester Fire was vicariously liable for Bauman’s negligence under the doctrine of respondeat superior. Gronseth later dismissed her claim against Bauman. Chester Fire moved for summary judgment asserting that Bauman was immune from liability under SDCL 20-9-4.1, which immunity extended to Chester Fire. The statute, known as the “Good Samaritan statute,” provided at the time:
No peace officer, conservation officer, member of any fire department, police department and their first aid, rescue or emergency squad, or any citizen acting as such as a volunteer, or any other person is hable for any civil damages as a result of their acts of commission or omission arising out of and in the course of their rendering in good faith, any emergency care and services during an emergency which is in their judgment indicated and necessary at the time. Such relief from liability for civil damages shah extend to the operation of any motor vehicle in connection with any such care or services.
Nothing in this section grants any such relief to any person causing any damage by his willful, wanton or reckless act of commission or omission.

Id.

[¶ 4.] Before ruling on Chester Fire’s motion for summary judgment, the federal district court recognized that this Court had not yet interpreted SDCL 20-9-4.1. Therefore, the district court certified the following question to the South Dakota Supreme Court:
The Defendant driver was driving his own vehicle to the fire hall from which the firemen would then drive an emergency vehicle to the scene of the fire. Is the driving to the fire hall “any emergency care or services during an emer-gency_” so that ' SDCL 20-9-4.1 would preclude liability to Plaintiff passenger unless Plaintiff showed the causing of “any damage by [Defendant’s] willful, wanton or reckless act of commission or omission”?
In re Certification of a Question of Law, 2010 S.D. 16, ¶ 6, 779 N.W.2d 158, 161 (alteration in original). We answered:
[T]he act of this volunteer fire fighter driving to the fire hall in a personal vehicle in response to an emergency fire call is included within the language “any emergency care and services,” so that SDCL 20-9^11 would preclude liability unless Gronseth shows that Bauman’s conduct was “willful, wanton or reckless[.]”
Id. ¶ 16.
[¶ 5.] While Gronseth’s federal suit was pending, Gabriel brought suit in state *540 court against Bauman and Chester Fire. He, like Gronseth, alleged that Bauman was negligent and Chester Fire was vicariously liable for Bauman’s negligence. Gabriel further alleged that Chester Fire negligently trained Bauman and failed to equip his vehicle appropriately. After this Court’s decision in Certification of a Question of Law, 2010 S.D. 16, 779 N.W.2d 158, Gabriel amended his complaint to allege that Bauman’s conduct was willful, wanton, or reckless. He then reasserted that Chester Fire was vicariously liable for Bauman’s negligence and that Chester Fire negligently trained Bauman and inadequately equipped Bauman’s vehicle, which conduct proximately caused injury to Gabriel.
[¶ 6.] Bauman and Chester Fire moved for summary judgment on the ground that Bauman’s conduct was not willful, wanton, or reckless as a matter of law. During the hearing, Bauman and Chester Fire directed the circuit court to cases interpreting the phrase “willful and wanton misconduct” from our long-repealed guest statute. See, e.g., Melby v. Anderson, 64 S.D. 249, 266 N.W. 135 (1936) (citing our former guest statute, which has been repealed by 1978 S.D. Sess. Laws ch. 240, § 1). Relying on these cases, Bauman and Chester Fire insisted that Gabriel must prove that Bauman consciously realized that by speeding in response to an emergency he would in all probability collide with Gabriel’s vehicle. Chester Fire further asserted that SDCL 20-9-4.1 extended immunity to Chester Fire against Gabriel’s negligent training and equipment claims.
[¶ 7.] At the conclusion of the hearing, the circuit court orally granted Bauman and Chester Fire summary judgment. It ruled that “[tjhere was nothing beyond the speed of Mr. Bauman that was a factor in this accident from his conduct[,]” and based on the law, “speed alone is insufficient.” The court further ruled that “the training and equipment issue[s]” with Chester Fire “were not willful, wanton, or reckless” as a matter of law.
[¶ 8.] In this appeal, Gabriel asserts that the circuit court erred when it granted summary judgment to Bauman because (1) the cases interpreting the repealed guest statute are not controlling, (2) speed alone may constitute willful, wanton, or reckless conduct, and (3) there are additional circumstances beyond Bauman’s speed to support a finding that Bauman acted willfully, wantonly, or recklessly. Gabriel also asserts that the court erred when it granted summary judgment to Chester Fire because Chester Fire’s administrative decisions related to training and equipment do not meet the “during an emergency” requirement of SDCL 20-9-4.1.[1]
Analysis and Decision
[¶ 9.] Gabriel maintains that the circuit court erroneously relied on South Dakota’s repealed guest statute to rule as a matter of law that Bauman did not act willfully, wantonly, or recklessly. See SDCL 32-34-1 (repealed by 1978 S.D. Sess. Laws ch. 240, § 1). Under that statute, a passenger in a vehicle could not recover damages *541 from the vehicle owner or operator for negligence unless there was “willful and wanton misconduct of the owner or operator” and that misconduct contributed to the guest’s injury. Id. Emphasizing the absence of the word “reckless” and highlighting that the guest statute used the conjunctive “and,” Gabriel argues that “willful and wanton misconduct” cannot invoke the same statutory standard as a “willful, wanton, or reckless act of commission or omission[.]” Moreover, he argues that there is. no support for the court’s declaration that speed alone can never rise to the level of willful, wanton, or reckless conduct. Finally, Gabriel contends that he presented sufficient evidence in addition to Bauman’s speed to establish that there is an issue of material fact in dispute on whether Bauman’s conduct was willful, wanton, or reckless.
[¶ 10.] In granting Bauman and Chester Fire summary judgment, the circuit court did not identify what standard it used under SDCL 20-9-4.1 or what language it found persuasive from our cases interpreting the repealed guest statute. Nonetheless, at the close of the hearing, the court ruled:
The court does find as a matter of law that Mr. Bauman’s conduct was not willful, wanton, or reckless as defined by statute. That there’s not a material fact in issue relating to that decision.
The court finds that under the cases previously determined by the Supreme Court, speed alone is insufficient. There was nothing beyond the speed of Mr. Bauman that was a factor in this accident from his conduct.
Bauman and Chester Fire assert that although the guest statute has been repealed, this “Court’s directives regarding the meaning of willful, wanton, or reckless misconduct remain authoritative[.]”
[¶ 11.] We have not before interpreted what is meant by the language “willful, wanton, or reckless act of commission or omission” under SDCL 20-9-4.1. But we have defined “willful and wanton misconduct” in the context of our repealed guest statute, see Melby, 64 S.D. 249, 266 N.W. at 137 (adopting the definition), “willful misconduct” in the context of our workers’ compensation statutes, see Holscher v. Valley Queen Cheese Factory, 2006 S.D. 35, ¶ 48, 713 N.W.2d 555, 567-68, “willful and wanton misconduct” in the context of certain criminal statutes, see State v. Seidschlaw, 304 N.W.2d 102, 105-06 (S.D.1981), willful, wanton, or malicious in the context of punitive damages, see Berry v. Risdall, 1998 S.D. 18, 1133, 576 N.W.2d 1, 9, and “reckless” in the context of release agreements, see Holzer v. Dakota Speedway, Inc., 2000 S.D. 65, ¶ 17, 610 N.W.2d 787, 793. In these cases, we have consistently declared that willful, wanton, and reckless conduct “partakes to some appreciable extent, though not entirely, of the nature of a deliberate and intentional wrong.” Melby, 64 S.D. 249, 266 N.W. at 137; see Holscher, 2006 S.D. 35, ¶ 48 n. 2, 713 N.W.2d at 568 n. 2; Berry, 1998 S.D. 18, ¶35, 576 N.W.2d at 9. “ ‘Conduct is gross, willful, wanton, or reckless when a person acts or fails to act, with a conscious realization that injury is a probable, as distinguished from a possible (ordinary negligence), result of such conduct.’ ” Holzer, 2000 S.D. 65, ¶ 17, 610 N.W.2d at 793 (quoting Lee v. Beauchene, 337 N.W.2d 827, 828 (S.D.1983)); see Melby, 64 S.D. 249, 266 N.W. at 137. We have also said that a defendant must have “an affirmatively reckless state of mind.” Allen v. McLain, 74 S.D. 646, 649, 58 N.W.2d 232, 234 (1953) (emphasis added); Espeland v. Green, 74 S.D. 484, 489, 54 N.W.2d 465, 467 (1952).
[¶ 12.] Gabriel does not challenge these definitions. Rather, he contends that the Legislature meant something different in *542 SDCL 20-9^4.1 by using the word “reckless” and the disjunctive “or.” But the prevailing view among courts defining these terms is that “willful,” “wanton,” and “reckless” most commonly mean the same thing.[2] In essence, most authorities recognize that all three terms signify an actor’s mental state and look to whether the actor intended to do an act that was of an unreasonable character, in disregard of a known or obvious risk, which risk was so great as to make it highly probable that harm would result. See W. Page Keeton, et al., Prosser and Keeton on the Law of Torts § 34 (5th ed.1984).
[¶ 13.] Thus, the circuit court did not err when it used this Court’s definition of “willful and wanton misconduct” from our repealed guest statute to gauge whether Bauman’s conduct was willful, wanton, or reckless under SDCL 20-9-4.1. Yet we question the circuit court’s ruling that speed alone would not be sufficient to rise to the level of willful, wanton, or reckless conduct. We might conceive of instances where a driver’s speed alone would become willful, wanton, or reckless under SDCL 20-9-4.1.
[¶ 14.] Regardless, Gabriel is not claiming that Bauman’s speed alone constituted willful, wanton, or reckless conduct. He contends that additional facts combined with speed create a jury question sufficient to survive summary judgment. Specifically, Gabriel points to the fact that (1) Bau-man was trained and instructed by Chester Fire to obey the speed limits and other rules of the road, (2) Chester Fire Chief, Steve Heyn, testified that Chester Fire chose not to equip personal vehicles with emergency lights because of a concern that the firefighters would drive “like cowboys,” (3) the collision occurred on the 4th of July, which Bauman knew would cause an increase in traffic, (4) Bauman saw Gabriel’s vehicle at least 887 feet before the collision and heard Cheryl say, “Oh no, don’t go,” and (5) Bauman did not attempt to apply the breaks until 96 feet before the collision.
[¶ 15.] In reviewing whether the court erred in granting summary judgment, we ask not only whether there is a conflict in the evidence, but also whether the undisputed facts are such that reasonable minds might differ in interpreting them in arriving at different conclusions on whether the defendant was willful, wanton, or reckless. Whether one acts willfully, wantonly, or recklessly is, like negligence, normally a jury question. See State v. Tammi, 520 N.W.2d 619, 622 (S.D.1994); Campbell v. Massucci, 190 Ohio App.3d 718, 944 N.E.2d 245, 251 (2010).
[¶ 16.] Because willfulness, wantonness, or recklessness “is almost never admitted, and can be proved only by *543 the conduct and the circumstances, an objective standard must of necessity in practice be applied.” W. Page Keeton et al., Prosser and Keeton Handbook on the Law of Torts § 34, at 212-14. The conduct must be more than mere mistake, inadvertence, or inattention. There need not be an affirmative wish to injure another, but, instead, a willingness to injure another. “[A] defendant’s reckless state of mind may be inferred from conduct and actions so patently dangerous that a reasonable person under the circumstances would know, or should know, that his conduct will in all probability prove disastrous[.]” Wittmeier v. Post, 78 S.D. 520, 526, 105 N.W.2d 65, 68 (1960). On the other hand, this Court warned long ago that if we draw the line of willful, wanton, or reckless conduct too near to that constituting negligent conduct, we risk “opening a door leading to impossible confusion and eventual disregard of the legislative intent ... to give relief from liability for negligence.” Espeland, 74 S.D. at 490-91, 54 N.W.2d at 468.
[¶ 17.] Under the undisputed facts, this case is controlled by Gunderson v. Sopiwnik. In Gunderson, a guest statute case, this Court observed that a defendant’s driving, nearly identical to Bau-man’s, failed to demonstrate a conscious realization that an accident was probable rather than possible. See 75 S.D. 402, 408, 66 N.W.2d 510, 513 (1954). We quote the Court:
Essential to such conduct is the conscious realization by defendant that his acts [would] in all probability (as distinguished from possibly) produce the precise result which it did produce. We believe the facts and inferences to be drawn therefrom fail to show any such realization by defendant. True, defendant was driving too fast as he approached and entered this intersection, but there is nothing upon which to base a finding that he consciously realized that the driver of the [other] car would in all probability as distinguished from, possibly turn across his path at a point where it would be impossible for defendant to stop before a collision occurred.
Id. (emphasis added).
[¶ 18.] Taken in a light most favorable to Gabriel, the facts of this case show that Bauman was speeding to the fire station with his hazard lights engaged. Bauman saw that Gabriel’s vehicle intended to turn, but Bauman had the right of way and he did not think Gabriel’s vehicle was going to turn in front of him. Despite an unobstructed view of Bauman’s oncoming vehicle for approximately 887 feet, Gabriel turned in front of Bauman. Bauman attempted to avoid the accident, but was unable to stop in time.
[¶ 19.] Reasonable persons may understand that they should not exceed the speed limit and that by exceeding the speed limit, they are undertaking a risk of causing an accident. Under our case law, however, reasonable persons under the same or similar circumstances present in this case would not have consciously realized that speeding would — in all probability — result in the accident that occurred. Nothing in the record can support a jury finding that Bauman consciously realized, before it was too late to avoid the collision, that Gabriel would in all probability turn in front of him. See id. at 408, 66 N.W.2d at 513. We affirm summary judgment for Bauman.
[¶ 20.] On the other hand, the circuit court erred when it granted summary judgment to Chester Fire on Gabriel’s negligent training and equipment claims based on the immunity in SDCL 20-9-4.1. Although Chester Fire contends that the immunity in SDCL 20-9-4.1 extends to Gabriel’s direct negligence claim, because the claim arises out of Bauman’s rendering *544 of emergency services, SDCL 20-9-4.1 does not protect the acts of a fire department or fire district. The statute provides immunity to a “peace officer, conservation officer, member of any fire department, police department and their first aid, rescue or emergency squad, or any citizen acting as such as a volunteer, or any other person[.]” Id. Unlike the cases cited by Chester Fire, our statute does not specifically include a fire department or district or define “person” to include a fire district or fire department. Compare SDCL 20-9-4.1 with Cubit v. Mahaska Cnty., 677 N.W.2d 777, 782 (Iowa 2004) (statute applies to municipality); District of Columbia v. Walker, 689 A.2d 40, 49 (D.C.1997) (statute includes district); Stevenson v. Capital Fire Mut. Aid Sys., Inc., 163 Vt. 623, 661 A.2d 86, 87 (1995) (specifically relates to municipality). Chester Fire is not immune under SDCL 20-9 — 4.1.[3]
[¶ 21.] Chester Fire also asserts that it is protected from liability by sovereign immunity. But Chester Fire did not plead or raise sovereign immunity as an affirmative defense in its answer to Gabriel’s complaint or amended complaint. Immunity from liability for damages under SDCL 21-32A-3 must be timely asserted and “[m]ere conclusory allegations are not substitutes for specific facts.” See Olesen v. Town of Hurley, 2004 S.D. 136, ¶ 12, 691 N.W.2d 324, 328. The dissent dismisses Chester Fire’s failure to specifically plead the affirmative defense because Chester Fire pleaded that it was “immune” generally and made one statement during its argument at the November 2012 summary judgment hearing that Chester Fire is a public body, Bauman is a public employee, and discretionary acts are exempt and im-muñe. The dissent further contends that Chester Fire is immune from suit unless and until Gabriel proves that Chester Fire waived its immunity under SDCL 21-32A-3.
[¶ 22.] Chester Fire is not immune from suit in the same way the State enjoys sovereign immunity protection. “We must remind ourselves (and the Legislature) that the state’s sovereign immunity is the state’s sovereign immunity and nothing more. It belongs to the state and to no one else.” Aune v. B-Y Water Dist., 464 N.W.2d 1, 5 (S.D.1990); see Cromwell v. Rapid City Police Dep’t, 2001 S.D. 100, ¶ 13, 632 N.W.2d 20, 24. Rather, the South Dakota Legislature “extended the reach of sovereign immunity to all public entities of this state,” by adopting SDCL 21-32A-3. Cromwell, 2001 S.D. 100, ¶ 13, 632 N.W.2d at 24. In doing so, the Legislature specifically imposed the burden on a public entity to invoke its immunity as an affirmative defense. See, e.g., Elkjer v. City of Rapid City, 2005 S.D. 45, ¶ 7, 695 N.W.2d 235, 238 (City did not raise the defense, so sovereign immunity not directly in issue); Olesen, 2004 S.D. 136, ¶ 13, 691 N.W.2d at 328 (sovereign immunity waived).
[¶ 23.] At no point did Chester Fire make a specific request that the circuit court address the issue of sovereign immunity. Raising a legal argument for the first time in an appellate brief limits the opposing party’s ability to respond. Had the issue been specifically raised below, “the parties would have had an opportunity to consider whether additional evidence was needed to decide the issue and certainly would have had an opportunity to brief the issue for the trial court’s consid *545 eration.” Hall v. State, 2006 S.D. 24, ¶ 12, 712 N.W.2d 22, 27. Moreover, “[w]e will ordinarily decline to review issues not properly presented to the trial court.” Estate of Gaspar v. Vogt, Brown & Merry, 2008 S.D. 126, ¶ 15, 670 N.W.2d 918, 924 (citation omitted); see also Steiner v. Cnty. of Marshall, 1997 S.D. 109, ¶27, 568 N.W.2d 627, 683 (citation omitted).
[¶ 24.] It would be improvident to declare that Chester Fire is protected by sovereign immunity when the record before us is scant and the allegations by Chester Fire are conclusory. The circuit court granted summary judgment solely under SDCL 20-9-4.1. If we, like the dissent, were to make inferences from Chester Fire’s statements, we could just as easily rule that Chester Fire has insurance and, therefore, has waived sovereign immunity under SDCL 21-32A-3. Chester Fire alluded to the existence of insurance during a partial summary judgment hearing in August 2012, when it discussed sovereign immunity and argued that it did not waive immunity on Gabriel’s claim for punitive damages, because there was no insurance coverage for punitive damages. In any event, there is no record evidence either way concerning risk-pool and insurance coverage; therefore, there are genuine issues of material fact on that issue. “Summary judgment is appropriate under SDCL 15-6-56 when the entire record reveals that there is no genuine issue on any material fact and that the moving party is entitled to a judgment as a matter of law. If there are genuine issues of material fact, then summary judgment is improper.” Fisher v. Kahler, 2002 S.D. 30, ¶ 5, 641 N.W.2d 122, 124-25 (citations omitted). Because Chester Fire did not affirmatively assert its immunity from suit under SDCL 21-32A-3, we decline to decide the sovereign immunity issue.[4]
[¶ 25.] Affirmed in part, reversed in part, and remanded.
[¶ 26.] ZINTER, SEVERSON and WILBUR, Justices, concur.
[¶ 27.] GILBERTSON, Chief Justice, dissents.

. Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.” SDCL 15-6-56(c). We view the evidence in a light most favorable to the nonmoving party. Paradigm Hotel Mortg. Fund v. Sioux Falls Hotel Co., Inc., 511 N.W.2d 567, 569 (S.D.1994) (citation omitted). "Statutory interpretation is a question of law reviewed de novo.” In re B.Y. Dev., Inc., 2010 S.D. 57, ¶ 7, 785 N.W.2d 296, 299 (citation omitted).

. See W. Page Keeton, et al., Prosser and Keeton on the Law of Torts § 34, at 212-14 (5th ed.1984); see also Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 57, 127 S.Ct. 2201, 2208-09, 167 L.Ed.2d 1045 (2007) (Fair Credit Reporting Act); Catheline v. Seaboard Coast Line R.R. Co., 348 F.Supp. 43, 47-48 (M.D.Fla.1972); Martin v. Brady, 261 Conn. 372, 802 A.2d 814, 819 (2002); Elliott v. City of Waterbury, 245 Conn. 385, 715 A.2d 27, 42 (1998); Dubay v. Irish, 207 Conn. 518, 542 A.2d 711, 719 (1988) (declining to draw "definitional distinctions” between the terms); Thompson v. Bohlken, 312 N.W.2d 501, 504-05 (Iowa 1981); Turner v. City of Ruleville, 735 So.2d 226, 230 (Miss.1999); Dotzler v. Tuttle, 234 Neb. 176, 449 N.W.2d 774, 781 (1990) (guest statute); contra Sandler v. Commonwealth, 419 Mass. 334, 644 N.E.2d 641, 643-44 (1995) (defining each word separately). Indeed, the Restatement (Second) of Torts § 500 (2013) recognized that the words "willful,” "wanton,” and "reckless” have been used singularly or in combination to describe characteristics of conduct. See also 57A Am.Jur.2d Negligence § 241 Generally (2014); 65 C.J.S. Negligence § 100 (2014).

. That is not to say, however, that Chester Fire is not protected by SDCL 20-9-4.1 against Gabriel's claim that Chester Fire is vicariously liable for Bauman’s negligence. That claim arises out of Bauman’s rendering in good faith emergency care. If Bauman is not liable, Chester Fire is not vicariously liable.

. The dissent argues that we should uphold summary judgment because Gabriel did not raise insurance coverage as a waiver of sovereign immunity. This subject was not broached at the trial court level or in the appellate briefs. Before we rule on such a question, we ought to give the parties a fair opportunity to address it.