#28406-a-DG
**2018 S.D. 71**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

ROBERT FISCHER,                                           Plaintiff and Appellant,

   v.

CITY OF SIOUX FALLS,                                     Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JOHN R. PEKAS
Judge
* * * *

ANDREW R. DAMGAARD
JAMI J. BISHOP of
Johnson, Janklow, Abdallah
  & Reiter, LLP
Sioux Falls, South Dakota                         Attorneys for plaintiff and
                                                  appellant.


WILLIAM C. GARRY
MELISSA R. JELEN of
Caldwell, Sanford, Deibert
  & Garry, LLP
Sioux Falls, South Dakota                         Attorneys for defendant and
                                                  appellee.

* * * *

CONSIDERED ON BRIEFS
ON MARCH 19, 2018
OPINION FILED **10/03/18**

#28406

GILBERTSON, Chief Justice

[¶1.]	Robert Fischer sustained serious injuries while riding a bicycle through a public park in Sioux Falls.  Fischer sued the City of Sioux Falls for negligence, but the circuit court granted the City's request for summary judgment, concluding that the City is immune from liability for such negligence claims.  Fischer appeals, arguing there is a genuine issue of material fact as to whether the City's conduct amounts to gross negligence or willful or wanton misconduct.  We affirm.

### Facts and Procedural History

[¶2.]	On June 29, 2014, Fischer and his grandson were riding their bicycles along a paved path in Kuehn Park, which is owned by the City of Sioux Falls.  Kuehn Park offers a golf course, playground, softball diamonds, swimming pool, and tennis courts.  For parkgoers entering via the paved path, the most direct route to the tennis courts and swimming pool is through the northern gate of the tennis courts.  Noticing that the tennis courts' northern gate was open, Fischer diverted from the path and rode through the grass, intending to access the tennis courts and swimming pool.  While riding into a depressed area, the front tire of Fischer's bicycle became lodged in a natural drainage ditch that had been concealed by grass.  Fischer was thrown from his bicycle and sustained serious injuries, including fractures in his back, neck, and sternum.

[¶3.]	Fischer filed an action against the City on May 3, 2016, alleging a single claim of "negligence."  In the complaint, Fischer alleged that the City owed him a duty to make the park reasonably safe or to warn him of concealed dangers like the drainage ditch.  He also alleged that the City "failed to use reasonable care

or diligence to design, construct, maintain in good repair, inspect and upgrade the area where [Fischer] was injured or to warn [him] of the concealed danger."

[¶4.] On November 14, 2016, the City filed a motion requesting summary judgment. The City argued that it was immune from liability for negligence under SDCL 20-9-20, which generally states that a political subdivision of South Dakota owes no duty of care to keep land used for outdoor recreational purposes safe or to warn of dangerous conditions. Although Fischer had not alleged gross negligence or willful or wanton misconduct in his complaint, he responded that SDCL 20-9-20 did not immunize the City from liability for such claims. The parties deposed several of the City's employees, who generally testified that they were aware of the natural drainage ditch, that the ditch was often concealed by grass, and that they believed a bicyclist attempting to ride over the ditch could be injured. After holding a hearing on September 11, 2017, the circuit court granted the City's motion.

[¶5.] Fischer appeals, raising the following issue: Whether the circuit court erred by granting the City's motion for summary judgment.

## Standard of Review

[¶6.] Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." SDCL 15-6-56(c). This Court "view[s] the evidence 'most favorably to the nonmoving party and resolve[s] reasonable doubts against the moving party[,]'" *Gades v. Meyer Modernizing Co.*, 2015 S.D. 42, ¶ 7, 865 N.W.2d 155, 158 (quoting *Peters v. Great W. Bank, Inc.*,

2015 S.D. 4, ¶ 5, 859 N.W.2d 618, 621), but a plaintiff must "substantiate [his] allegations with sufficient probative evidence that would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy[,]" *Schaefer v. Sioux Spine & Sport, PLLC*, 2018 S.D. 5, ¶ 9, 906 N.W.2d 427, 431 (quoting *Peters*, 2015 S.D. 4, ¶ 13, 859 N.W.2d at 624). Questions of law are reviewed de novo. *Mont.-Dakota Utils. Co. v. Parkshill Farms, LLC*, 2017 S.D. 88, ¶ 9, 905 N.W.2d 334, 338.

## Analysis and Decision

[¶7.] Fischer argues the circuit court erred by granting the City summary judgment. Fischer's complaint identifies a single cause of action: "negligence." The court granted summary judgment based on SDCL 20-9-20 and -21, which immunize a municipality from liability for negligence in connection with land open to the public for recreational use.[1] As Fischer points out, however, a municipality remains

---

1.  SDCL 20-9-20 removes a municipality's duty of reasonable care:

    > Except as provided in § 20-9-22, any political subdivision of South Dakota, and its employees acting within the scope of their duties *owe no duty of care to keep the land safe* for entry or use by others for outdoor recreational purposes, *or to give any warning* of a dangerous condition, use, structure, or activity on the land to persons entering the land for outdoor recreational purposes.

    (Emphasis added.) And SDCL 20-9-21 removes a public-park goer's status as an invitee:

    > Except as provided in § 20-9-22, any political subdivision of South Dakota, and its employees, by either directly or indirectly inviting or permitting the person to use the land described for outdoor recreational purposes or by charging a fee for admittance to parks, campgrounds, or other recreational areas, *do not* thereby:

    (continued . . .)

liable for an injury caused on such land that results from the "gross negligence or willful or wanton misconduct" of a municipality employee.  SDCL 20-9-22(1).  The City points out that the phrases *gross negligence* and *willful or wanton misconduct* are noticeably absent from Fischer's complaint.  But Fischer maintains that the question whether the conduct alleged transcends ordinary negligence is a factual question to be resolved by a jury.

[¶8.]　　　　In South Dakota, the phrases *gross negligence* and *willful or wanton misconduct* mean the same thing.  *E.g.*, *Holscher v. Valley Queen Cheese Factory*, 2006 S.D. 35, ¶ 48 n.2, 713 N.W.2d 555, 568 n.2 (quoting *Granflaten v. Rohde*, 66 S.D. 335, 339, 283 N.W.2d 153, 155 (1938)) ("The words 'gross negligence' are, for practical purposes, substantially synonymous with the phrase 'willful and wanton misconduct.'"); *Melby v. Anderson*, 64 S.D. 249, 252-53, 266 N.W.2d 135, 137 (1936) (holding that the phrase *gross negligence* "is really a misnomer" and that "the conduct described by those words . . . amounts to willful, wanton, or reckless misconduct").  These phrases refer to a category of tort that is "different in kind and characteristics" than negligence.  *E.g.*, *Tranby v. Brodock*, 348 N.W.2d 458, 461 (S.D. 1984).  Both categories involve an assessment of the risk that a defendant's

_____

(. . . continued)

　(1) Extend any assurance that the land is safe for any purpose; or

　(2) *Confer upon any person the legal status of an invitee or licensee to whom a duty of care is owed*; or

　(3) Assume responsibility for, or incur liability for, any injury to persons or property caused by an act of omission of the political subdivision of South Dakota, and its employees as to maintenance of the land.

(Emphasis added.)

-4-

conduct poses to others.  *State v. Larson*, 1998 S.D. 80, ¶ 14, 582 N.W.2d 15, 18.

Negligence involves an "unreasonable risk of harm to another[.]"  W. Page Keeton

et al., *Prosser and Keeton on the Law of Torts* § 34, at 212 (5th ed. 1984); *see also*

*Englund v. Vital*, 2013 S.D. 71, ¶ 21 n.6, 838 N.W.2d 621, 629 n.6.  But for conduct

to be willful or wanton, the risk involved must be "substantially greater than that

which is necessary to make [the] conduct negligent."  *Holzer v. Dakota Speedway*

*Inc.*, 2000 S.D. 65, ¶ 17, 610 N.W.2d 787, 793 (quoting Restatement (Second) of

Torts § 500 (Am. Law Inst. 1965)).  And the harm threatened must be "an easily

perceptible danger of death or substantial physical harm[.]"  Restatement (Second)

of Torts § 500 cmt. a; *see also Holzer*, 2000 S.D. 65, ¶ 17, 610 N.W.2d at 793.

[¶9.]          Additionally, establishing willful or wanton misconduct requires proof

of an element not present in a negligence claim.  "The central issue in the ordinary

negligence case is whether the defendant has deviated from the required standard

of reasonable care, not his mental state at the time of the conduct."  *Papke v.*

*Harbert*, 2007 S.D. 87, ¶ 17, 738 N.W.2d 510, 516 (quoting *Shamburger v. Behrens*,

380 N.W.2d 659, 663 (S.D. 1986)).  In contrast, "courts have often said that reckless,

willful[,] or wanton misconduct . . . entails a mental element.  The defendant must

*know or have reason to know* of the risk and must in addition proceed without

concern for the safety of others . . . ."  Dan B. Dobbs et al., *The Law of Torts* § 140

(2d ed.), Westlaw (database updated June 2018) (emphasis added).  Or as this Court

has said, the "defendant must have 'an affirmatively *reckless* state of mind.'"

*Gabriel v. Bauman*, 2014 S.D. 30, ¶ 11, 847 N.W.2d 537, 541 (quoting *Allen v.*

*McLain*, 74 S.D. 646, 649, 58 N.W.2d 232, 234 (1953)).  So while "[w]illful and

wanton misconduct is not identical to intentional conduct," *Kelly v. Kelly*, 89 S.D. 58, 61, 228 N.W.2d 332, 333 (1975), willful and wanton misconduct does "partake[] to some appreciable extent . . . of the nature of a deliberate and intentional wrong." *Tranby*, 348 N.W.2d at 461.

[¶10.]       In light of the foregoing, the requirements for alleging willful or wanton misconduct (i.e., gross negligence) are different than those for alleging negligence.  While a plaintiff alleging negligence must prove merely that some harm is possible, a plaintiff alleging willful or wanton misconduct must prove a substantial probability of serious physical harm.  Moreover, a plaintiff alleging willful or wanton misconduct must prove the defendant acted with a culpable mental state.  Thus, while alleging willful or wanton misconduct can raise a jury question as to whether a defendant's conduct has been negligent, *Antonen v. Swanson*, 74 S.D. 1, 11, 48 N.W.2d 161, 166-67 (1951), alleging negligence is insufficient to raise a jury question as to whether a defendant's conduct has been willful or wanton, *Olesen v. Snyder*, 249 N.W.2d 266, 270 (S.D. 1976).  Because Fischer "did not allege willful [or] wanton misconduct specifically or generally" in his complaint, the question is whether Fischer alleged "any facts which might [imply] such conduct on the part of" the City.  *Id.*

[¶11.]       As noted above, the phrases *gross negligence* and *willful or wanton misconduct* do not appear in Fischer's complaint.  Nor does the evidence submitted on the motion for summary judgment (i.e., the pleadings, depositions, answers to interrogatories, admissions, and affidavits, pursuant to SDCL 15-6-56(c)) distinguish his cause of action from one for ordinary negligence.  The evidence in

the record does not suggest that the rut posed an easily perceptible danger of death or other serious physical harm; indeed, Fischer's complaint asserts that the rut simply "poses *danger* to citizens at the park[.]" (Emphasis added.) Nor does the evidence in the record suggest that the probability of such "danger" is substantially greater than that required for ordinary negligence—Fischer's complaint does not address the question of probability at all. Even on appeal, Fischer's summary of the City's employees' deposition testimony suggests that harm was merely possible rather than substantially probable; he asserts that the employees testified that "the front tire [of a bicycle] *could* sink into the rut," that "the front tire *could* get stuck," that "the bike *could* flip," and that "a member of the public *could* be seriously injured." (Emphasis added.) So while the evidence in the record suggests that the City knew its conduct posed an unreasonable risk of harm to the public (i.e., that the City was *negligent*) that evidence does not suggest that the City acted "with a conscious realization that [a serious physical] injury [was] a *probable*, as distinguished from a *possible* (ordinary negligence), result of such conduct." *Gabriel*, 2014 S.D. 30, ¶ 11, 847 N.W.2d at 541 (emphasis added) (quoting *Holzer*, 2000 S.D. 65, ¶ 17, 610 N.W.2d at 793).

[¶12.] Considering the evidence in the record in light of the differences between negligence and willful or wanton misconduct, the circuit court did not err by granting summary judgment. "[T]his Court warned long ago that if we draw the line of willful, wanton, or reckless conduct too near to that constituting negligent conduct, we risk 'opening a door leading to impossible confusion and eventual disregard of the legislative intent to give relief from liability for negligence.'"

*Gabriel*, 2014 S.D. 30, ¶ 16, 847 N.W.2d at 543 (quoting *Espeland v. Green*, 74 S.D. 484, 490-91, 54 N.W.2d 465, 468 (1952)). Thus, when a plaintiff's cause of action simply resembles ordinary negligence, summary judgment is appropriate. *See, e.g.*, *Gabriel*, 2014 S.D. 30, ¶¶ 17-19, 847 N.W.2d at 543 (affirming summary judgment for defendant, holding that defendant's failure to slow his vehicle from a speed exceeding the legal limit even when an oncoming vehicle signaled a turn across the defendant's lane of traffic was not willful or wanton misconduct);[2] *Tranby*, 348 N.W.2d at 461-62 (affirming summary judgment for defendant, holding that defendant's operation of a motor vehicle with bald tires at a speed exceeding the legal limit on a gravel road at night and after consuming seven alcoholic beverages was not willful or wanton misconduct).

**Conclusion**

[¶13.] When faced with immunity to liability for ordinary negligence under statutes like SDCL 20-9-20 and -21, a plaintiff cannot survive summary judgment by simply alleging negligence as a cause of action. In this case, Fischer did just

---

2. In *Gabriel*, the Court concluded:

> Reasonable persons may understand that they should not exceed the speed limit and that by exceeding the speed limit, they are undertaking a risk of causing an accident. Under our case law, however, reasonable persons under the same or similar circumstances present in this case would not have consciously realized that speeding would—in all probability—result in the accident that occurred.

2014 S.D. 30, ¶ 19, 847 N.W.2d at 543. Likewise, in this case, while reasonable people may understand that failing to mark the drainage rut created an unreasonable risk of harm (i.e., negligence), reasonable people under circumstances similar to those in this case would not consciously realize that failing to mark the rut would create a substantial probability of death or serious physical injury.

that. And Fischer failed to provide "sufficient probative evidence that would permit a finding [of willful or wanton misconduct] on more than mere speculation, conjecture, or fantasy." *Schaefer*, 2018 S.D. 5, ¶ 9, 906 N.W.2d at 431 (quoting *Peters*, 2015 S.D. 4, ¶ 13, 859 N.W.2d at 624). Thus, summary judgment was appropriate.

[¶14.]        We affirm.

[¶15.]        ZINTER and JENSEN, Justices, and SEVERSON, Retired Justice, concur.

[¶16.]        KERN, Justice, dissents.

[¶17.]        SALTER, Justice, not having been a member of the Court at the time this case was assigned to the Court, did not participate.


KERN, Justice (dissenting).

[¶18.]        The legislature set a high, but not absolute, bar to tort claims against political subdivisions operating a park, campground, or other recreational area. SDCL 20-9-20 provides that a political subdivision "owe[s] no duty of care to keep the land safe for entry or use by others for outdoor recreational purposes, or to give any warning of a dangerous condition . . . on the land to persons entering the land for outdoor recreational purposes." Under SDCL 20-9-22, however, such immunity is limited. Political subdivisions are liable for acts of "gross negligence or willful or wanton misconduct." SDCL 20-9-22(1).

[¶19.]        As set forth in the majority opinion, gross negligence or willful or wanton misconduct requires evidence that the political subdivision acts with a

"conscious realization that injury is a probable, as distinguished from a *possible* (ordinary negligence), result of such conduct." *Gabriel v. Bauman*, 2014 S.D. 30, ¶ 11, 847 N.W.2d 537, 541 (emphasis in original). Moreover, "[t]he conduct must be more than mere mistake, inadvertence, or inattention . . . [t]here need not be an affirmative wish to injure another, but, instead, a willingness to injure another." *Id.* ¶ 16, 847 N.W.2d at 543.

[¶20.]    Although Fischer must establish pursuant to SDCL 20-9-22(1) that the City's conduct rose to the level of gross negligence, we have stated that generally "whether a defendant's conduct constitutes a breach of a duty is a question of fact." *Nicolay v. Stukel*, 2017 S.D. 45, ¶ 16, 900 N.W.2d 71, 78. Further, in considering whether Fischer presented a genuine issue of material fact under the standard of gross negligence, we must view the evidence and every reasonable inference drawn from the facts most favorable to Fischer. *Weitzel v. Sioux Valley Heart Partners*, 2006 S.D. 45, ¶ 16, 714 N.W.2d 884, 891 (explaining that orders of summary judgment require "all facts and favorable inferences from those facts must be viewed in a light most favorable to the nonmoving party"). The question is not whether this Court would find gross negligence, but whether the facts create a genuine issue of material fact from which a reasonable juror could find that the City acted with a "conscious realization that injury [was] a probable, as distinguished from a *possible* . . . result" of the dangerous condition that existed in Kuehn Park.

*Gabriel*, 2014 S.D. 30, ¶ 11, 847 N.W.2d at 541 (quoting *Holzer v. Dakota Speedway, Inc.*, 2000 S.D. 65, ¶ 17, 610 N.W.2d ,793.[3]

[¶21.]     The majority opinion acknowledges that "the evidence in the record suggests that the City *knew* its conduct posed an unreasonable risk of harm to the public . . . ." Majority ¶ 11 (emphasis added).  Several City employees testified that they knew about the sizeable rut in the grassy area between the paved trail immediately to the north of the tennis court and swimming pool areas.  These employees testified that thousands of visitors enter Kuehn Park each year and a

---

3.     Other courts have considered a landowner's knowledge of a hidden danger to be evidence of gross negligence because it increases the probability that a user will not discover and avoid a dangerous condition.  *See, e.g.*, *State v. Shumake*, 199 S.W.3d 279, 289 (Tex. 2006) (Wainwright, J., concurring) (stating that where evidence indicated defendant knew that several persons had nearly drowned in a culvert designed by defendant due to a concealed undertow just prior to the death of plaintiff's nine-year-old daughter, plaintiffs alleged sufficient facts to support a finding of gross negligence); *Antonace v. Ferri Contracting Co., Inc.*, 467 A.2d 833, 837 (Pa. Super. Ct. 1983) (holding that "it is clear that a jury could conclude that appellant knew that dirt bike riders such as the decedent were using the property, and that in view of this knowledge, erection or maintenance of a steel cable, in a position of limited visibility, without markings or warning signs, constituted, an act of unreasonable character . . . .") (internal quotation marks omitted).

The Illinois Court of Appeals considered a case with facts similar to Fischer's accident in *McDermott v. Metro. Sanitary Dist.*, in which a boy was severely injured when he rode his bike into a ditch obscured by weeds.  607 N.E.2d 1271, 1275-76 (Ill. App. Ct. 1992).  At trial, the evidence established that the defendant knew of the danger posed by the ditch, the ditch was located near a place used to gain access to a recreational area, and the ditch's danger was concealed by weeds and other vegetation.  *Id.* at 1287.  The court concluded "[i]n light of these circumstances, the record supports the jury's conclusion that the Village had actual or constructive knowledge that the concealed condition of Ditch A, where it crossed the dirt path, created a high probability that one using the dirt path could fall into the ditch and thereby sustain substantial physical injury, and that the Village nevertheless failed to undertake any measure to remedy this danger." *Id.*

City ordinance allows bicyclists to ride their bikes off the sidewalk. City employees testified to having observed bicyclists riding in the grassy areas of the park. Several employees testified to their personal knowledge and experience with the rut before Fischer was seriously injured when his bike tire hit the rut, causing him to be thrown from the bike. Such testimony included the fact that not only had lawnmowers been stuck in the rut in the past, but the rut was large enough to break the axle of a lawnmower if it was driven directly over the rut.

[¶22.]     The facts also show that the City employees *knew* that the rut was at times hidden by grass or grass clippings. Photographic evidence indicates that the rut became camouflaged after the area surrounding the rut was mowed. Moreover, on the day Fischer was injured, the evidence shows that a park guest playing tennis observed Fischer immediately after Fischer was injured. As this individual ran to assist and approached where Fischer was lying, he testified that he observed the grass and vegetation "completely obscured the rut to the point where it was not visible." The photographs of the rut and the park guest's observations demonstrate that the dangerous condition was obscured and could not be appreciated by parkgoers.

[¶23.]     Additionally, a fact question exists regarding the probability of harm created by the City's decision to open a gate on the north end of the fenced-in tennis courts in approximately 2013. When the gate is open, bicyclists and pedestrians traveling on the paved trail can travel the short distance, over the grassy area where the rut is located, to the gate to gain access to the tennis court and swimming pool areas. As noted by the majority opinion, "[f]or parkgoers entering via the

paved path, *the most direct route to the tennis courts and swimming pool* is through the northern gate of the tennis courts." Majority ¶ 2 (emphasis added). Indeed, Fischer testified that the very reason he left the path was because the most direct route toward the tennis courts and swimming pool was over the concealed rut to reach the open gate.

[¶24.] But this route was not always available. The evidence shows that for a time prior to 2013 while the gate was open, the City received complaints from park guests about skateboarders and possibly bicyclists coming into the tennis court area. In response, the City closed the gate. For unknown reasons, the City re-opened the gate in 2013. The gates remained open at least until 2014 when Fischer was injured. When the gate is closed, bicyclists and pedestrians on the paved trail must go around through the parking lot area to access the tennis courts or pool. There would be little or no reason to expect park guests to cross over the rut when the north gate of the tennis court is closed. But after the gate was re-opened in 2013, a reasonable juror could conclude that park guests, particularly children, bicycling on the paved path, would see the open gate and take the shortest route over the hidden rut to the tennis courts and swimming pool. On these facts, the City's state of mind as to the likelihood of serious injury are questions of fact for the jury.

[¶25.] The majority deems the basis of Fischer's allegations "mere speculation, conjecture, or fantasy." Majority ¶ 13 (quoting *Schaefer v. Sioux Spine & Sport, Prof'l LLC*, 2018 S.D. 5, ¶ 9, 906 N.W.2d 427, 431). In so concluding, the majority claims that the evidence and deposition testimony offered by Fischer only

suggests the possibility, rather than probability, of harm. Majority ¶¶ 10-11. Highlighting questions posed to City employees rather than their answers, the majority apparently arrives at its conclusion in part because the attorneys did not couch their inquiries in stronger language. However, the majority ignores statements by City employees affirming, without reservation, the danger the rut posed:

> **Q:** And you wouldn't take a bicycle over that rut that you wouldn't take your mower over, would you?
>
> **A:** *Absolutely not.* (Emphasis added.)
>
> **Q:** Do you agree with me that if somebody did that, they could potentially be seriously injured?
>
> **A:** I would think so.
>
> . . . .
>
> **Q:** [W]ould you drive a bicycle across it, knowing what you know about it?
>
> **A:** No, I wouldn't ride a bicycle across it.
>
> . . . .
>
> **Q:** [W]ould you agree with me it would be dangerous to drive a bicycle over there at any significant speed?
>
> **A:** Yes.

[¶26.] Moreover, how those deposed responded to questions that failed to use a stronger word than "could" or "would" is not dispositive. Rather, we have said that "[b]ecause willfulness, wantonness, or recklessness 'is almost never admitted, and can be proved only by *the conduct and the circumstances*, an objective standard must of necessity in practice be applied.'" *Gabriel*, 2014 S.D. 30, ¶ 16, 847 N.W.2d at 542-43 (emphasis added) (quoting W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 34, at 212-14 (5th ed. 1984)). We must examine the case from the perspective of a reasonable person. *Id.* ¶ 19, 847 N.W.2d at 543.

[¶27.]      "Summary judgment is an extreme remedy, [and] is not intended as a substitute for a trial." *Stern Oil Co., Inc. v. Brown*, 2012 S.D. 56, ¶ 9, 817 N.W.2d 395, 399. There is evidence in the record that the rut poses an obvious danger. Knowing that the rut is often camouflaged by clippings and other debris and that many people cross the grass to access the tennis courts' north gate each year—including by bicycle—a reasonable person could conclude that the City's acts "would in all probability as distinguished from possibly" produce the precise result which it did produce. *Gabriel,* 2014 S.D. 30, ¶ 17*,* 847 N.W.2d at 543 (quoting *Gunderson v. Sopiwnik*, 75 S.D. 402, 408, 66 N.W.2d 510, 513 (1954)).

[¶28.]      I respectfully dissent from the majority's opinion. The circuit court erred in granting summary judgment to the City and this case should be reversed and remanded for a jury trial.