#30742-aff in pt & rev in pt-SRJ
**2025 S.D. 49**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

HAMIDEH MAHMOUDI,                                   Plaintiff and Appellant,

v.

CITY OF SPEARFISH,                                  Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
LAWRENCE COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE ERIC J. STRAWN
Judge

* * * *

HEATHER M. LAMMERS BOGARD of
Costello, Porter, Hill, Heisterkamp,
Bushnell & Carpenter, LLP
Rapid City, South Dakota                  Attorneys for plaintiff and
                                          appellant.


CASSIDY M. STALLEY of
Nooney & Solay, LLP
Rapid City, South Dakota                  Attorneys for defendant and
                                          appellee.

* * * *

ARGUED
MARCH 26, 2025
OPINION FILED **08/20/25**

#30742

JENSEN, Chief Justice

[¶1.]	Hamideh Mahmoudi filed suit against the City of Spearfish (City) alleging nuisance, negligence, and recklessness after she claims to have sustained injuries when she stepped onto a metal culvert installed by the City. The City moved for summary judgment on all claims. The circuit court granted the City's motion. We affirm in part and reverse in part.

## Factual and Procedural History

[¶2.]	In 1995 and 1996, the City undertook two improvement projects on Dahl Road—the 1995 Consolidated Street Improvement Project and the 1996 Dahl Road Sewer Improvement Project. As part of these projects, a metal culvert was installed beneath the roadway, leaving the culvert's end partially exposed in the roadside ditch. There are no sidewalks on either side of Dahl Road.

[¶3.]	On December 4, 2016, Mahmoudi, an ultra-marathon runner, was running along Dahl Road, facing oncoming traffic. To avoid an approaching vehicle, she stepped off the side of the road, and her foot became lodged in the culvert. This incident caused her to sustain a sprained ankle and a 5 cm laceration on her right shin; the laceration severed a vein and subsequently became infected, further complicating her injuries and necessitating additional medical treatment.

[¶4.]	In December 2017, Mahmoudi filed suit against the City, alleging nuisance, negligence, and recklessness. Mahmoudi alleged that the City was responsible for maintaining public rights-of-way—including roadways and ditches—and that it had left the culvert "in the public right-of-way, uncapped, and partially exposed." Mahmoudi claimed that the City owed her and the public a duty to

-1-

exercise reasonable and ordinary care to ensure the safety of the right-of-way and that it breached this duty by failing to inspect, identify, and remove hazards; provide safe walking surfaces; train its employees on pedestrian safety issues; and post conspicuous, meaningful warning signs to alert the public to potential hazards.

[¶5.]    In its answer, the City admitted that it was responsible for maintaining public rights-of-way within city limits and that it had a duty to use reasonable and ordinary care to keep them safe for public use.  The City denied failing to meet this standard and asserted that it had exercised ordinary care in maintaining the culvert.

[¶6.]    In answering interrogatories served by Mahmoudi, the City responded that its maintenance practices are primarily "complaint driven," with no routine culvert inspections conducted absent a complaint.  According to the City, no complaints were made regarding this culvert before Mahmoudi's accident, and no regularly scheduled inspections occurred in the twenty years following its installation.  The City also indicated that it has no written policies or procedures governing culvert inspection, installation, or maintenance.  It noted that occasional road work, such as patching and crack sealing, had taken place along Dahl Road since the 1995 and 1996 projects but such work did not involve the culvert.  The City acknowledged that mowing, weed control, and snow removal occurred periodically, yet stated it does not keep specific records of these activities and characterized any such documentation as "immense" in volume and largely unreviewed.  Nevertheless, the City made its records available for Mahmoudi's inspection.

[¶7.] In its interrogatory answers, the City also stated that it exposed the pipe and cut off the damaged portion of the culvert in mid-December 2016 after being notified of the incident. The City further explained that this repair was directed by the Spearfish Public Works Administrator and carried out by Street Department staff. No additional records or photographs of this work were created.

[¶8.] On February 29, 2024, the City moved for summary judgment, asserting that it owed no common law duty to maintain, repair, or ensure the safety of highways because municipalities are not liable for highway defects unless a statute imposes such liability. The City argued that although SDCL 31-32-10 imposes a limited statutory duty once notice is given that a highway is damaged or out of repair, Mahmoudi neither cited this statute nor alleged its violation. The City claimed that Mahmoudi's complaint relied solely on common law negligence theories, asserting that the City owed her and the general public a duty to inspect, train employees, and post warning signs. The City argued that these common law duties were abrogated by SDCL 31-32-10 and, absent a breach of the duty imposed by that statute, it could not be held liable for negligence.

[¶9.] The City asserted that SDCL 31-32-10 imposes liability only when "a highway becomes out of repair" and not for inherent design defects but did not address whether the culvert was damaged or reference any evidence in the record to establish its condition, beyond asserting that "[t]he culvert was marked with a marker post." The City also included interrogatory responses Nos. 11–13 in which it described how, following Mahmoudi's accident in mid-December 2016, a City employee inspected the culvert and "cut off the damaged end section."

-3-

[¶10.]     The City argued that Mahmoudi's nuisance claim failed as a matter of law because SDCL 21-10-2 "exempts statutorily authorized actions or maintenance from" constituting a nuisance. On Mahmoudi's claim for recklessness, the City argued that Mahmoudi had alleged only common law negligence and that neither her complaint nor any discovery materials provided sufficient support for a claim of gross negligence.

[¶11.]     Mahmoudi opposed summary judgment, asserting that the City's motion was predicated on its immunity as a municipality and arguing that such a defense was improper because the City failed to affirmatively plead immunity in its answer. She further contended that the City should be bound by its own admission of duty in its answer. Mahmoudi acknowledged that she did not explicitly cite SDCL 31-32-10 in her complaint, but argued that her allegations were sufficient to place the City on notice of her claim. She also argued that the requirements for liability under SDCL 31-32-10 were met because "the culvert that was to be maintained by [the City] became out of repair, resulting directly in an injury to [Mahmoudi]." She argued that the City had constructive notice of the damaged culvert since City employees "had repeated open views of the culvert while mowing, weeding, and plowing" snow.

[¶12.]     Regarding her nuisance claim, Mahmoudi maintained that the exemption within SDCL 21-10-2 does not permit a public entity to negligently create a nuisance and then avoid liability. She also contended that her gross negligence claim was supported by the fact that the City had not inspected or

maintained the culvert in the twenty years since its installation, nor implemented an inspection policy like those required for townships under SDCL 31-14-33.

[¶13.]    Mahmoudi submitted an affidavit with seven exhibits attached including two photos of the culvert identified as Exhibits A and C.  The affidavit described Exhibit A as "a photograph taken after Defendant repaired the damaged



culvert, showing the lack of a sidewalk in the area where Plaintiff was running." Exhibit C was described as "a photograph of the uncapped, exposed, damaged culvert taken within days of the subject accident."

[¶14.]    The City responded in its reply brief that it was not asserting immunity as a defense.  The City also argued for the first time that Mahmoudi had failed to provide evidence showing that the culvert was damaged or that the City

had notice of such damage. In support of this argument, the City claimed the photographs Mahmoudi provided as Exhibits A and C did not show visible damage to the culvert, "such as a gaping hole in the top, a piece of metal sticking up, or otherwise."

[¶15.] At the summary judgment hearing, the City reiterated the arguments from its briefs, emphasizing that it owed no common law duty to Mahmoudi and that SDCL 31-32-10 did not apply because she had not established that the culvert was damaged. In response, Mahmoudi argued that the City's position contradicted its earlier admissions and discovery responses. Specifically, she referenced the City's previous admission that the culvert was left uncapped and partially exposed in the public right-of-way, as well as its discovery responses stating that City employees had inspected the culvert after the incident and had cut off the damaged section. Counsel for Mahmoudi also read a portion of an email into the record that the City provided during discovery, stating:

> I would have submitted this to the Court had I thought this was an issue, but in . . . an e-mail from Cheryl Johnson at the city, December 13, 2016, in part says, "It appears that the culvert has been damaged and has a split in the corrugated top section. The culvert end is overgrown with grass and was snow covered from plowing."

[¶16.] Regarding the email, the City's counsel clarified that she had inherited the case and was unaware of the email because it was not part of the record currently before the circuit court. The City contended that even if damage were assumed, Mahmoudi had not shown that the City had constructive notice—arguing that routine mowing and weed-eating did not prove that the City knew or should have known of the culvert's condition.

[¶17.]     Following the hearing, the circuit court granted summary judgment in favor of the City, concluding that under South Dakota law, "a public entity does not owe a common law duty of care." The court further determined that Mahmoudi had failed to show that the culvert was damaged as required to establish a duty under SDCL 31-32-10, stating that "the evidence here is wholly insufficient to show there is a genuine dispute about whether the culvert was damaged." The court described the City's prior statements—that the damaged end of the culvert was removed following the accident—as "conclusory" and "inadmissible evidence of a subsequent remedial measure taken by the City[,]" concluding that such statements were insufficient evidence of damage. Although the court found that "there is no dispute that the culvert would have been observable by a City employee" it nonetheless concluded that "mere observation of the culvert does not show that the City had notice that the culvert was damaged." Accordingly, the court ruled that Mahmoudi's negligence claim failed as a matter of law, that her nuisance claim was barred by SDCL 21-10-2, and that her gross negligence claim was similarly unsupported.

[¶18.]     Mahmoudi appeals, raising the following issues:

1.   Whether the circuit court erred in concluding as a matter of law that Mahmoudi failed to present evidence to show that the City was negligent under SDCL 31-32-10.

2.   Whether the circuit court erred in concluding that SDCL 21-10-2 barred Mahmoudi's nuisance claim against the City.

3.   Whether the question of gross negligence should be submitted to the jury for determination.

## Standard of Review

[¶19.]     "We review a grant or denial of summary judgment de novo." *City of Sioux Falls v. Strizheus*, 2022 S.D. 81, ¶ 15, 984 N.W.2d 119, 123 (citation omitted). "In reviewing a grant or a denial of summary judgment under SDCL 15-6-56(c), we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law." *Burgi v. E. Winds Ct., Inc.*, 2022 S.D. 6, ¶ 15, 969 N.W.2d 919, 923 (citation omitted). "[W]hen there is reasonable doubt on whether a genuine issue of material facts exists, the doubt should be resolved against the movant." *Berbos v. Krage*, 2008 S.D. 68, ¶ 17, 754 N.W.2d 432, 437 (citation omitted).

## Analysis

### 1.     *Negligence under SDCL 31-32-10.*

[¶20.]     Mahmoudi contends that the record contains facts supporting her claim that the City had a duty under SDCL 31-32-10 to repair the damaged culvert and that it breached that duty.[1]  She highlights the City's prior admissions in its discovery responses, in which the City acknowledged that following Mahmoudi's

---

1.     Mahmoudi does not challenge the circuit court's conclusion that the City does not owe a common law duty of care with respect to streets and highways under *Hohm v. City of Rapid City*, 2008 S.D. 65, ¶ 19, 753 N.W.2d 895, 905. However, Mahmoudi maintains that the City waived any argument under SDCL 31-32-10 by failing to affirmatively plead sovereign immunity in its answer.  While acknowledging sovereign immunity's role in the early development of our case law, *Hohm* ultimately held that SDCL 31-32-10 abrogated any broader common-law duty municipalities once owed for street construction and maintenance.  *Id.* ¶ 22, 753 N.W.2d at 906.  Consequently, the City's argument that SDCL 31-32-10 limits any broader duty to Mahmoudi does not require affirmative pleading of sovereign immunity; it is simply a "no duty" defense.

accident, the culvert was inspected, and the damaged end section was exposed and removed by City employees.

[¶21.] The City argues that it is bound only to the factual admissions in its answer, while the existence of a duty remains a legal conclusion. Although the City acknowledges its discovery responses regarding the "damaged end section," it emphasizes that no such admission was ever made in any pleading, and underscores Mahmoudi's failure to reference it in her own statement of material facts, noting that she did not refer to them until they were read in open court during the summary judgment hearing.

[¶22.] "Duty is a question of law[.]" *Foster-Naser v. Aurora Cnty.*, 2016 S.D. 6, ¶ 10, 874 N.W.2d 505, 508 (citations omitted). "Whether a duty exists and the scope of that duty is for the court to determine." *Id.* (citation omitted). In relevant part, SDCL 31-32-10 provides:

> If any highway, culvert, or bridge is damaged . . . to the extent that it endangers the safety of public travel, the governing body responsible for the maintenance of such highway, culvert, or bridge, shall within forty-eight hours of receiving notice of such danger, erect guards over such defect or across such highway of sufficient height, width, and strength to guard the public from accident or injury and shall repair the damage or provide an alternative means of crossing within a reasonable time after receiving notice of the danger.

[¶23.] The duty imposed by SDCL 31-32-10 arises only when there is damage to a "highway, culvert, or bridge" and the governing body has notice of that damage. SDCL 31-32-10. "The statute creates no duty to design or construct a roadway

safely in the first place." *Godbe v. City of Rapid City*, 2022 S.D. 1, ¶ 22, 969 N.W.2d 208, 214 (quoting *Wilson v. Hogan*, 473 N.W.2d 492, 496 (S.D. 1991)).[2]

[¶24.] Mahmoudi bore the ultimate burden of proving the existence of a duty under SDCL 31-32-10 as one of the necessary elements for her negligence claim. *See Kuehl v. Horner (J.W.) Lumber Co.*, 2004 S.D. 48, ¶ 10, 678 N.W.2d 809, 812 ("The three necessary elements of actionable negligence are: (1) a duty on the part of the defendant; (2) a failure to perform that duty; and (3) an injury to the plaintiff resulting from such a failure."). However, "[i]n summary judgment proceedings, '[t]he burden is on the moving party to clearly show an absence of any genuine issue of material fact and an entitlement to judgment as a matter of law.'" *Strizheus*, 2022 S.D. 81, ¶ 18, 984 N.W.2d at 124 (second alteration in original) (citation omitted).

[¶25.] When moving for summary judgment, the City did not make any arguments or claims with respect to the condition of the culvert in its initial brief,

---

2. Although not relevant on this record, a governing body may satisfy its duty under SDCL 31-32-10 by erecting guards within forty-eight hours of receiving notice of damage and repairing the damage within a reasonable time. Thus, while "this statute imposes a duty, the duty is only to warn of danger and to make reasonably timely repairs upon notice that a damaged roadway is creating a safety hazard." *Godbe*, 2022 S.D. 1, ¶ 22, 969 N.W.2d at 214 (citation omitted). This Court has also held that whether a governing body breached its duty under SDCL 31-32-10 is "a question for the factfinder." *Fritz v. Howard Twp.*, 1997 S.D. 122, ¶ 17, 570 N.W.2d 240, 243. Further, we have noted that an unexcused violation of SDCL 31-32-10 can constitute negligence per se. *See id.* ("[A]n unexcused violation of a statute enacted to promote safety constitutes negligence per se." (citation omitted) (alteration in original)). Although negligence per se addresses the duty and breach elements of negligence, a plaintiff must still demonstrate that "the violation of a statutory duty was the proximate cause of [their] injury[.]" *Id.* ¶ 17, 570 N.W.2d at 243 (citations omitted).

nor did the City argue that there was no evidence that the culvert was damaged. In her response brief, Mahmoudi specifically cited the City's response to interrogatory No. 13—which acknowledged that City employees observed the damaged condition of the culvert after the accident—and repeatedly referred to the culvert as "damaged" both in her brief and in her statement of undisputed facts. Although Mahmoudi did not put forth other evidence to show that the culvert was damaged, the City's statement of undisputed facts conceded that the culvert was damaged by citing its own interrogatory answers referencing the "damaged end section" of the culvert being cut off after Mahmoudi's accident.

[¶26.] In its rebuttal brief, the City relied on the photos Mahmoudi submitted as Exhibits A and C to argue that "there is no apparent damage to the culvert[.]" The City did not acknowledge that these photos were taken at different times and depicted the culvert in different conditions as indicated in Mahmoudi's affidavit. Nor did the City attempt to explain why it had previously admitted that the culvert was damaged or indicate that its previous responses were inaccurate in describing the condition of the culvert as damaged.

[¶27.] On motion for summary judgment, "a party may not claim a version of the facts more favorable than the version given in the party's own testimony." *Werner v. Norwest Bank S.D., N.A.*, 499 N.W.2d 138, 140–41 (S.D. 1993) (citations omitted). Similarly, "[a]n issue of material fact will not be created by a party who attempts to change its testimony without an explanation for its change or a showing that its answers were ambiguous and that the new affidavit merely seeks to clarify that testimony." *DFA Dairy Fin. Servs., L.P. v. Lawson Special Tr.*, 2010 S.D. 34,

¶ 21, 781 N.W.2d 664, 670. It logically follows that a moving party cannot admit a fact in multiple prior statements and then, without any explanation or showing of ambiguity, reverse course to claim the fact does not exist.

[¶28.] In concluding there was no evidence that the culvert was damaged, the circuit court disregarded the City's prior statements describing the culvert as having a "damaged end section," labeling them as merely "conclusory." Further, in relying on Mahmoudi's photographs to conclude there was no visible damage, the court appears to refer to the photo depicting the culvert after it had been repaired. At the time these photos were submitted, the issue of whether the culvert was damaged was not in dispute and Mahmoudi offered these photos for different purposes—Exhibit A to show the culvert after the City removed the end section and Exhibit C to show the conditions around the time of the incident. Because the City had already admitted to "damaged" portions of the culvert in its interrogatory responses, and the photographs do not disprove that damage, there remains a genuine dispute of fact on the issue of damage.[3]

---

3. The circuit court also characterized the City's removal of the damaged culvert section as an "inadmissible subsequent remedial measure." Yet the City did not raise any arguments at summary judgment regarding the admissibility of this evidence under SDCL 19-19-407. Further, the City's observation of the condition of the culvert after the accident is not evidence of a subsequent remedial measure. But even if the City's action of cutting off the damaged end of the culvert is considered evidence of a subsequent remedial measure, such evidence may be admissible for other purposes, "such as impeachment or—if disputed—proving ownership, control, or the feasibility of precautionary measures." SDCL 19-19-407. Moreover, the Advisory Committee Notes to Federal Rule of Evidence 407—on which SDCL 19-19-407 is modeled—clarify that those "other purposes" also include establishing "ownership or control, *existence of duty*, and feasibility of

(continued . . .)

[¶29.]    Nonetheless, for a duty to exist under SDCL 31-32-10, the City must also have notice of the damaged condition of the culvert. This Court has held that constructive or implied notice is sufficient under SDCL 31-32-10. *See, e.g.*, *Fritz v. Howard Twp.*, 1997 S.D. 122, ¶ 21, 570 N.W.2d 240, 245; *Clementson v. Union Cnty.*, 256 N.W. 794, 796 (S.D. 1934); *Zens v. Chicago, Milwaukee, St. Paul & Pac. R. Co.*, 386 N.W.2d 475, 478 (S.D. 1986). "Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, and who omits to make such inquiry with reasonable diligence, is deemed to have constructive notice of the fact itself." *Fritz*, 1997 S.D. 122, ¶ 21, 570 N.W.2d at 245 (quoting SDCL 17-1-4). We have also held that it is a question of fact for a jury to determine whether a governing body had constructive notice of damage under SDCL 31-32-10. *Id.* ¶ 22, 570 N.W.2d at 245.

[¶30.]    The circuit court acknowledged that "there is no dispute that the culvert would have been observable by a City employee" but held that there was no constructive notice because "mere observation of the culvert does not show that the City had notice that the culvert was damaged." However, this negative inference is not an appropriate assessment on summary judgment. Moreover, the court based its conclusion, at least in part, on the photo taken of the culvert after it had been repaired by the City. "It is a question of fact for the jury to determine whether [the City], in the exercise of ordinary care, should have discovered that the" culvert was damaged before this accident. *Id.* ¶ 22, 570 N.W.2d at 245. Mahmoudi's lacerated

_____

(. . . continued)
    precautionary measures, if controverted, and impeachment." Fed. R. Evid.
    407, Advisory Committee Notes (emphasis added).

shin and her claim that her foot became lodged in the culvert creates an inference that there was a jagged edge or opening on the culvert. Further, the City's own sworn statement about finding the culvert to be in a damaged condition after the accident suggests the condition was observable. Finally, the facts in the record show that City employees did periodic maintenance in the area surrounding the culvert, including mowing, weed removal, and plowing snow. These facts are sufficient to create a question for the jury as to whether the City should have observed the culvert's damaged condition.

[¶31.]     Because there are genuine issues of material fact as to whether the culvert was damaged and whether the City should have discovered this damage, the circuit court erred in granting summary judgment on Mahmoudi's negligence claim under SDCL 31-32-10.

### 2.     *Nuisance*

[¶32.]     Mahmoudi argues that the circuit court erred in holding that her nuisance claim was barred by SDCL 21-10-2. Mahmoudi contends that the City is not protected by SDCL 21-10-2 because the City wholly failed to maintain the culvert and, therefore, her nuisance claim should be allowed to proceed under SDCL 21-10-1.[4] The City argues that the circuit court correctly concluded that Mahmoudi

---

4.     Mahmoudi cites *Greer v. City of Lennox*, in which this Court upheld a nuisance claim arising from a city's operation of a dump, determining that the city's statutory authorization to operate the dump "does not extend to the creation or maintenance of such an improper or unlawful condition." 107 N.W.2d 337, 338 (S.D. 1961). However, *Greer* only addressed the question of nuisance liability as an exception to governmental immunity for negligence under the common law, not conduct that is statutorily exempt from being considered a nuisance. *Id.* at 338–39. Moreover, *Greer* involved a private

(continued . . .)

could not show the City created a nuisance by negligently maintaining the culvert because she could not show that the City was negligent. The City also contends that its maintenance and repair of highways is statutorily authorized conduct for which it cannot be held liable in nuisance under SDCL 21-10-2.

[¶33.] Under SDCL 21-10-1,

> A nuisance consists in unlawfully doing an act, or omitting to perform a duty, which act or omission either:
> (1) Annoys, injures, or endangers the comfort, repose, health, or safety of others;
> (2) Offends decency;
> (3) Unlawfully interferes with, obstructs, or tends to obstruct, or renders dangerous for passage, any . . . sidewalk, street, or highway;
> (4) In any way renders other persons insecure in life, or in the use of property.

[¶34.] However, "South Dakota law specifically exempts statutorily authorized actions or maintenance from being considered a nuisance." *Hedel-Ostrowski v. City Of Spearfish*, 2004 S.D. 55, ¶ 13, 679 N.W.2d 491, 497. Under SDCL 21-10-2, "[n]othing which is done or maintained under the express authority of a statute can be deemed a nuisance." *See Hedel-Ostrowski*, 2004 S.D. 55, ¶ 13, 679 N.W.2d at 497 (holding that an individual injured while using a swing in a public park could not sue the city for nuisance because the city maintained the swing pursuant to its statutory authority to establish public parks for the benefit of the public).

---

(. . . continued)
nuisance claim by a neighboring landowner whose private property interest was significantly impacted by the city's operation of a dump. *Id.* In contrast, the present claim arises from the City's statutory authority to construct and maintain culverts and highways for the benefit of the general public.

[¶35.] We have also generally held that mere negligence in the construction, design, or maintenance of public highways does not constitute a nuisance. *See Dohrman v. Lawrence Cnty.*, 82 S.D. 207, 212, 143 N.W.2d 865, 868 (1966) ("The alleged omissions at most consist of negligence in construction, maintenance, and design of highways and are not sufficient to constitute a nuisance."); *Vesely v. Charles Mix Cnty.*, 66 S.D. 570, 570, 287 N.W. 51, 52 (1939) ("The alleged omission of the county was mere negligent conduct incident to and in the direct course of the performance of a statutory duty and was not an act separate and apart from the duty of constructing and maintaining highways and bridges delegated by the state."). We have similarly held that SDCL 21-10-2 precludes a nuisance claim against a city for the repair and maintenance of city streets. *See Loesch v. City of Huron*, 2006 S.D. 93, ¶ 13, 723 N.W.2d 694, 698 ("Because the City was repairing and maintaining the road pursuant to a statutory obligation, the trial court did not err in concluding that the City's acts did not constitute a nuisance.").

[¶36.] SDCL 9-45-1 provides municipalities with the power to plan, construct, and repair streets, and SDCL 9-45-3 expressly authorizes them to construct and repair culverts. Although failing to repair known damage to a culvert may breach the duty set forth in SDCL 31-32-10, a city remains exempt from nuisance liability under SDCL 21-10-2 because its actions, even if negligently performed, are still conducted under the express authority granted by statute. Therefore, the exemption in SDCL 21-10-2 precludes Mahmoudi's nuisance claim against the City.

### 3. *Gross Negligence*

[¶37.] Mahmoudi argues that the circuit court erred in concluding that there was no evidence of gross negligence. Mahmoudi's argument reiterates her view that the City violated a duty by neglecting the culvert entirely for two decades and by failing to create an inspection policy. She further contends that City employees necessarily knew or should have known of the hazard—given frequent mowing, weeding, and plowing in the area—and that this extended disregard reflects a conscious indifference, sufficient to establish a prima facie case of gross negligence.

[¶38.] The City, however, argues that it had no duty to maintain or inspect the culvert and Mahmoudi has offered no evidence to show that City officials possessed the culpable state of mind necessary to prove "willful or wonton misconduct" or gross negligence. The City also points out that the phrases "gross negligence" or "willful or wonton misconduct" do not appear in Mahmoudi's complaint, where she originally asserted "negligence and recklessness." Further, the City contends that the fact it had not inspected the culvert for twenty years, at most establishes a failure to exercise reasonable care for negligence and is insufficient to demonstrate gross negligence.

[¶39.] "In South Dakota, the phrases *gross negligence* and *willful or wanton misconduct* mean the same thing." *Fischer v. City of Sioux Falls*, 2018 S.D. 71, ¶ 8, 919 N.W.2d 211, 215 (citations omitted). However, "[t]hese phrases refer to a category of tort that is 'different in kind and characteristics' than negligence." *Id.* (citation omitted). "While a plaintiff alleging negligence must prove merely that some harm is possible, a plaintiff alleging [gross negligence] must prove a

-17-

substantial probability of serious physical harm." *Id.* ¶ 10, 919 N.W.2d at 215. "Additionally, [gross negligence] requires proof of an element not present in a negligence claim." *Id.* ¶ 9, 919 N.W.2d at 215. "[A] plaintiff alleging [gross negligence] must [also] prove the defendant acted with a culpable mental state." *Id.* ¶ 10, 919 N.W.2d at 215–16.

[¶40.] Summary judgment was proper on any claim by Mahmoudi for gross negligence as there is no evidence in the record to distinguish Mahmoudi's gross negligence claim from one of ordinary negligence. At most, the evidence shows that the City's failure to inspect or maintain the culvert posed an unreasonable risk of harm to the public. There is no evidence to suggest that the City knew its conduct posed a substantial probability of serious physical harm to the public. Mahmoudi's assertions that the City should have known about the culvert problem over twenty years are insufficient as a matter of law to support a claim of gross negligence.

### Conclusion

[¶41.] We reverse the circuit court's grant of summary judgment on the negligence claim, concluding that genuine issues of material fact remain as to whether the City was negligent under SDCL 31-32-10. We affirm the circuit court's grant of summary judgment on the claims of nuisance and gross negligence.

[¶42.] SALTER, DEVANEY, and MYREN, Justices, concur.

[¶43.] KERN, Justice, concurs specially.

KERN, Justice (concurring specially).

[¶44.] I join the Court's opinion in its entirety. However, I write separately to share my view that the *Hohm* decision too quickly disposed of municipalities'

common law duties. The *Hohm* Court reached this conclusion by reviewing nearly a hundred years of tort law. It first determined that the Legislature intended to abrogate municipalities' common law duties respecting roads by enacting a statutory framework in Chapter 210, Laws 1915 that imposed a duty on cities, counties, and townships to "keep all public roads and highways, culverts and bridges in such condition as to render them safe and passable and free from danger of accidents or injury to persons or property, while in the lawful use thereof[.]" *See Hohm v. City of Rapid City*, 2008 S.D. 65, ¶ 9, 753 N.W.2d 895, 900. Then, the Court noted that in 1939, the Legislature amended a subsequent version of Chapter 210 and eliminated this broad duty, leaving only a narrower duty to guard and repair a road that becomes destroyed or out of repair. *Id.* ¶ 19, 753 N.W.2d at 905; 1939 SDC § 28.0913. Accordingly, the Court concluded that the Legislature intended to eliminate all duties owed by municipalities except the narrow guard and repair duty. *Id.* However, a closer look at the common law distinctions between municipal and quasi-corporate (townships and counties) liability—as well as previous and subsequent legislative reforms—suggests that the Legislature may have simply intended to limit liability for negligent road maintenance, which it subsequently expanded in 1986, and municipalities may still have a common law duty today respecting roads outside SDCL 31-32-10.

[¶45.] In considering this question, it is necessary to look at the development of our jurisprudence in this area, just as the Court did in *Hohm*.[5] At common law,

---

5. This writing is not intended to be an all-inclusive assay of the law in this area.

local government entities were classified as either quasi-corporations or municipal corporations.  Counties, townships, and school districts were classified as quasi-corporations, and as such, they were deemed involuntary "political subdivisions of the state" possessing only those "powers expressly granted to them, and such implied powers as are necessary to enable them to perform their duties, and no more."  *Town of Dell Rapids v. Irving*, 7 S.D. 310, 64 N.W. 149, 151 (1895).  Although these entities "possess some corporate functions and attributes," they remain "primarily political subdivisions,—agencies in the administration of civil government"—with corporate powers granted solely "to enable them more readily to perform their public duties."  *Id.*

[¶46.]	Thus, at common law, quasi-corporations enjoy governmental immunity from liability in tort and in the absence of a specific statute waiving such immunity "are not liable for damages caused by neglectful performance of" a duty.  *Jensen v. Juul*, 66 S.D. 1, 278 N.W. 6, 8 (1938).  *See also Williams v. Wessington Twp.*, 70 S.D. 75, 77, 14 N.W.2d 493, 494 (1944) ("The reason assigned for the rule of non-liability at common law is that counties and townships are political subdivisions of the state exercising a part of the sovereign powers of the state and liable only to the extent the state itself would be . . . ."); *Conway v. Humbert*, 82 S.D. 317, 320, 145 N.W.2d 524, 526 (1966) ("The basic principle underlying the rule of governmental immunity is sovereignty."); *and Bailey v. Lawrence Cnty.*, 5 S.D. 393, 59 N.W. 219 (1894) (adopting this rule).[6]  Consequently, "[c]ounties and townships,

---

6.	However, *Hohm* relies on our decisions applying this rule in the context of SDCL 31-32-10 and its predecessors to state that we have "held that county

(continued . . .)

being quasi corporations, are not liable in the absence of statute imposing liability for injuries caused by defective highways." *Williams*, 70 S.D. at 77, 14 N.W.2d at 494.

[¶47.] By contrast, municipal corporations were "created mainly for the interest, advantage, and convenience of the locality of its people[,]" serving as an "agency to regulate and administer the internal concerns of the locality in matters peculiar to the place incorporated, and not common to the state or people at large." *Irving*, 64 N.W. at 151. The common law recognized that a municipal corporation "has a dual character and performs dual functions," acting in "a governmental character for the administration of the general laws" or in "a corporate, private or proprietary capacity." *Conway*, 145 N.W.2d at 526. Thus, the general rule was that a municipality was immune from tort liability when acting in a governmental capacity "because . . . it is merely the agent of the state[,]" but it was liable for negligence "when performing duties consequent upon the exercise of its corporate or private powers." *Id. See also Bucholz v. City of Sioux Falls*, 77 S.D. 322, 325–26, 91 N.W.2d 606, 608 (1958), overruled by *Hohm*, 2008 S.D. 65, 753 N.W.2d 895. Because the construction and maintenance of municipal streets were deemed a corporate or proprietary function, municipal corporations were "liable for injuries

---

(. . . continued)
and township *duties* as to highway maintenance were statutory." *Hohm*, 2008 S.D. 65, ¶ 8, 753 N.W.2d at 900 (emphasis added). *See also id.* (quoting *Hanigan v. Minnehaha Cnty.*, 47 S.D. 606, 609, 201 N.W. 522, 523 (1924)) ("Prior to the adoption of chapter 210, Laws 1915 . . . it was the settled law of this jurisdiction, following the rule of the common law, that a county was not liable for damages caused by the neglect of its officers to keep in repair a bridge upon a public highway because there was no express statute creating such a liability.").

sustained in consequence of their failure to use due care to keep their streets in a reasonably safe condition for public travel." *Williams*, 70 S.D. 75, 77, 14 N.W.2d at 494. *See also Bucholz*, 91 N.W.2d at 610 ("[A] municipality while engaged in the construction, repair or maintenance of its streets and sidewalks acts in a corporate or proprietary capacity[.]").

[¶48.] Although the rationale for distinguishing between quasi-corporations and municipal corporations may no longer be readily apparent, this common law distinction has been codified in statute for more than a century. Consistent with the common law rules regarding municipal liability, SDCL 9-24-5, which was first enacted in 1907, contemplates a municipality's liability for personal injury or death caused by its negligence. No analogous statute imposes comparable liability upon counties or townships.

[¶49.] Counties and townships were first made liable for the negligent construction and maintenance of highways by Chapter 210, Laws 1915, which provided in relevant part:

> § 1. Guards Erected—Repairs made. It shall be the duty of the road supervisors of any township, town or city, and the county commissioners of any county not fully organized into civil townships, to keep all public roads and highways, culverts and bridges in such condition as to render them safe and passable and free from danger . . . and in case such roads, highways, culverts or bridges shall become in whole or in part destroyed or out of repair . . . to such an extent as to endanger the safety of public travel, it shall be their duty upon receiving notice thereof to cause to be erected, for the protection of travel and public safety, within twenty-four hours thereafter, substantial guards over such defects . . . of sufficient height, width and strength to warn and guard the public from accident or injury . . . and it shall also be their duty to repair the same within a reasonable time thereafter. . . .

§ 2. Penalty. Any such officer or officers, who shall violate the provisions of this act shall be guilty of a misdemeanor and upon conviction shall be punished by a fine . . . or by imprisonment in the county jail . . . or both such fine and imprisonment.

§ 3. Damages. Any person shall have a cause of action against such city, town, township or county for injury to persons or property sustained by reason of any violation of the provisions of this act.

§ 4. All acts and parts of acts in conflict with this act are hereby repealed.

1915 S.D. Sess. Laws ch. 210.

[¶50.] Although Chapter 210 was neither the first nor the only statute imposing maintenance and repair duties on counties and townships, it was one of the few instances in which immunity was waived, so its significance lies not in the duties it enumerated but in its waiver of immunity from liability. Municipalities, which were already liable at common law, were also included in the statute. While the law repealed any statute inconsistent with its provisions, Chapter 210 was consistent with other statutes reflecting the common law rule that municipalities could be held liable for negligence when acting under their proprietary function. *See, e.g.*, SDCL 9-24-5 ("Any action for recovery of damages for personal injury or death caused by the negligence of a municipality . . . shall be commenced within two years from the occurrence of the accident causing the injury or death.").

[¶51.] Under the provisions of Chapter 210, local governments—counties, townships, and municipalities—were responsible for maintaining the roads within their respective jurisdictional boundaries. However, through Chapter 333, Laws 1919, South Dakota entered "a new era of highway construction." *Hanigan v. Minnehaha Cnty.*, 47 S.D. 606, 201 N.W. 522. To align with the Federal Aid Road Act of 1916, Chapter 333 introduced a more unified approach to highway oversight

and established "three systems of highways: (1) The state trunk highway system, aided by federal funds, constructed by the state highway commission; (2) the county highway system constructed by the counties under the supervision of the state highway commission; and (3) secondary roads, constructed by townships." *Id.* Chapter 333 is the source for much of what is today codified in Title 31. *See* SDCL 31-1-5 (defining the highway systems to "clarify[] the duties and powers of the various governmental state agencies charged with the administration of the highways in South Dakota[.]").

[¶52.] Very few provisions of Chapter 333 were applicable to municipalities. Those that did apply, however, only concerned the portions of municipal streets connected to the state trunk highway or county highway systems. *See* 1919 S.D. Sess. Laws ch. 333, § 9 (requiring county highway systems to "include that portion of the main traveled roads within incorporated cities and towns" but requiring municipalities to maintain the roads once constructed); *id.* § 61 (making cities liable for damages resulting from the city's maintenance or repair of public utilities, roads, and streets which make the trunk highway system "unsafe or dangerous for public travel"). Thus, although municipal streets and alleys are deemed "highways of this state" under SDCL 31-1-4, Title 31's current provisions primarily govern only the larger highway systems. *See* SDCL 31-1-5 (defining the highway systems "for the purpose of clarifying the duties and powers of the various governmental state

agencies charged with the administration of the highways in South Dakota," none of which include municipal streets and roads).[7]

[¶53.] Also in 1919, the highway liability statute enacted by Chapter 210, Laws 1915, underwent its first revision and was codified at Sections 8589 and 8590 of the Revised Code of 1919, which provided in part:

> § 8589. Guards Erected–Repairs. It shall be the duty of the governing body of every city, incorporated town and organized civil township, and of the board of county commissioners in territory not included in any such city, town or township, to keep the public highways, culverts and bridges in such condition as to render them safe, passable and free from danger of accident or injury . . . and in case any highway, culvert or bridge shall become, in whole or in part, destroyed or out of repair . . . to such an extent as to endanger the safety of public travel, it shall be the duty of such governing body or board, upon receiving notice thereof, to cause to be erected for the protection of travel and public safety, within twenty-four hours thereafter, substantial guards over such defect or across such highway of sufficient height, width and strength to warn and guard the

---

7. SDCL 31-1-5 states:

> For the purpose of clarifying the duties and powers of the various governmental state agencies charged with the administration of the highways in South Dakota, the following definitions of highway systems shall be applicable:
>   (1) "State trunk system," the highways designated by statute to be controlled and supervised by the Department of Transportation;
>   (2) "County highway system," the highways designated by the board of county commissioners in organized counties under the supervision of these bodies that have been approved by the Department of Transportation;
>   (3) "Township highways," the secondary highways in organized townships that are administered by a board of township supervisors;
>   (4) "County secondary highways," the rural local highways in organized counties, excluding the approved county highway system, that are under the supervision of a board of county commissioners.

> public from accident or injury, and to repair the same within a reasonable time thereafter. . . .
>
> § 8590. Violation–Penalty–Damages. Any officer who shall violate the provisions of the preceding section shall be deemed guilty of a misdemeanor . . . any person who shall sustain injury to person or property by reason of any violation of such section shall have a cause of action against the city, town, township or county as the case may be.

S.D. Rev. Code 1919, §§ 8589–90.

[¶54.]      In 1923, the Legislature assigned to the State Highway Commission the duty to maintain and repair the trunk highway system, which previously was the responsibility of the counties for the portion of the highway within its borders. 1923 S.D. Sess. Laws ch. 285; *see also Cain v. Meade Cnty.*, 54 S.D. 540, 223 N.W. 734, 735 (1929) ("By [Chapter 333, Laws 1919] the maintenance . . . of the trunk system devolved upon the county in which the highway was located. By chapter 285, Laws 1923, the duty of maintaining such highways was transferred from the county to the state highway commission."). In 1931, the Legislature amended Section 8589 to exclude organized civil townships, making counties responsible for repairing and maintaining roads within the county except those in cities and incorporated towns. 1931 S.D. Sess. Laws ch. 167; *Clementson v. Union Cnty.*, 63 S.D. 104, 256 N.W. 794, 795–96 (1934).

[¶55.]      These changes appeared to create a conflict between the public entity vested with the duty to maintain and repair the road and the entity that could be held liable for negligent maintenance or repair. Under a literal reading of the relevant provisions, an injured party could bring an action against a *county* for injuries resulting from the negligent repair of a highway when the duty to maintain and repair the highway was vested with the *state*. Reasoning that the Legislature

could not have intended such a result, this Court in *Waller v. Edmunds County* concluded:

> [B]y §§ 8589 and 8590 . . . the Legislature did not intend to charge any sub-division with new and independent duties, but rather intended thereby to amplify and render explicit the duties assigned by other primary statutes dealing with maintenance and repair, *and through a waiver of sovereignty to grant a right of action against the named sub-divisions* for negligence in connection with their respective duties in the premises.

67 S.D. 165, 290 N.W. 484, 485 (1940) (emphasis added). In other words, *Waller* determined that Sections 8589 and 8590 were *liability* statutes, not *duty* statutes.

[¶56.]       While *Waller* was still pending, however, Sections 8589 and 8590 were replaced in 1939 by SDC 28.0913, which provided:

> In case any highway, culvert, or bridge shall become in whole or in part destroyed or out of repair by reason of floods, fires, or other cause to such an extent as to endanger the safety of public travel, it shall be the duty of the governing body or board under statutory duty to maintain such highway, culvert, or bridge upon receiving notice thereof to cause to be erected for the protection of travel and public safety, within twenty-four hours thereafter, substantial guards over such defect or across such highway of sufficient height, width, and strength to guard the public from accident or injury and to repair the same within a reasonable time thereafter. . . .
> Any person who shall sustain injury to person or property by reason of any violation of this section shall have a cause of action against the county, township, city, or town as the case may be for such damages as he may have sustained.

1939 SDC § 28.0913.

[¶57.]       This Court addressed the changes to the statute for the first time in *Reaney v. Union County*, where we stated that "[t]he revised text is not a mere rearrangement of the substance of the old statutes." 69 S.D. 392, 396, 10 N.W.2d 762, 764 (1943). Rather, by eliminating the broad duty to maintain safe highways

and retaining only the duty to guard and repair destroyed or out of repair highways, the Legislature intentionally *narrowed the scope of liability*. *Id.* at 762.

[¶58.] In my view, the significance of the duty described in SDC 28.0913 was not that it was the only duty public entities had with respect to roads, but that a cause of action existed for a breach of the duty it specified. Although the Legislature narrowed the scope of liability by eliminating the broader duty in Section 8589, it enacted or left intact several other statutes which imposed duties with respect to roads. Critically, these statutes imposed duties only on counties and townships and no analogous statutes existed for cities. *See* 1939 SDC § 28.0408 ("It shall be the duty of [the county] to construct, repair, and maintain all secondary roads within the counties not included in any city."); 1939 SDC § 28.1402 ("The duty to construct and maintain all bridges and culverts throughout the county, except upon the State Trunk Highway system, is hereby imposed on the board of county commissioners[.]"); 1939 SDC § 28.1415 (imposing duty on townships and counties to inspect culverts at least once every three months and conduct repairs). But without a waiver of immunity, duties falling outside SDC 28.0913 were unenforceable. *See Reaney*, 69 S.D. at 397, 10 N.W.2d at 764 ("[A]ssum[ing] that the county had been derelict in its duties," by failing "to install adequate signs warning of the danger . . . we conclude that the present statute does not afford plaintiff a remedy for injuries proximately caused thereby.").

[¶59.] SDC 28.0913 was subsequently divided and recodified as SDCL 31-32-10, governing the "guard and repair" duty, and SDCL 31-32-11, governing

governmental liability for violating SDCL 31-32-10.[8] This Court continued to reaffirm that the statutes were designed to restrict liability for highway maintenance to a narrowly defined statutory duty—namely, the duty to guard and repair highways that are damaged or out of repair—thereby effectively waiving sovereign immunity only to the extent expressly provided. *See Jensen v. Hutchinson Cnty.*, 84 S.D. 60, 62, 166 N.W.2d 827, 828 (1969), overruled on other grounds by *Kiel v. DeSmet Twp.*, 90 S.D. 492, 242 N.W.2d 153 (1976) ("[C]ounties and townships are not liable under the common law for injuries to persons or property for negligent construction, maintenance or repair of highways, and liability for damages is wholly statutory.").

[¶60.]     Thus, for most of their history, this Court consistently read SDCL 31-32-10 and 31-32-11 to provide for a waiver of immunity resulting in potential liability, not a limitation of the duties owed. The legislative decision in SDCL 31-32-10 to set a specific "guard and repair" duty, for which immunity was not available, does not in my view translate into an elimination of every other duty imposed by a different statute or common law.

---

8.     Prior to its repeal in 1986, SDCL 31-32-11 provided:

> Any person who shall sustain injury to person or property by reason of any violation of § 31-32-10 shall have a cause of action against the county, township, city, or town as the case may be for such damages as he may have sustained.

> In case of counties, notice to the member of the board of county commissioners of the commissioner district in which the injury occurred or to the county highway superintendent shall be considered as notice to the county.

[¶61.]     Although earlier caselaw consistently recognized municipal liability based on common-law liability principles, *Hohm* determined that the Legislature—in enacting the 1915 statute and later revising it in 1939—created a single statutory scheme that included all local governmental entities, thereby abrogating any broader common-law liability.  In so concluding, the *Hohm* Court reasoned that "the legislative inclusion of cities and towns in the statutes . . . subjected [them] to the new, *limited statutory liability* identical to that of counties and townships[.]" *Hohm*, 2008 S.D. 65, ¶ 13, 753 N.W.2d at 902.  However, *Hohm* also held that "cities' common-law duties respecting streets were abrogated by" SDCL 31-32-10 and its predecessors.  *Id.* ¶ 20, 753 N.W.2d at 905.

[¶62.]     By determining that cities' broader, common-law street-maintenance duties were entirely replaced by the duties in Chapter 210, Laws 1915, and then further limited in 1939, *Hohm* effectively treated municipalities as if they shared the same immunity-based starting point as quasi-corporations.  To further complicate the issue, the *Hohm* decision did not determine whether the Legislature intended merely to limit the scope of liability by constraining the duty for which sovereign immunity was waived or instead intended to eliminate all duties outside that narrow framework.  The importance of this distinction arises as a result of the Legislature's repeal of SDCL 31-32-11[9] and enactment of SDCL 21-32A-1 in 1986, which *Hohm* did not address.  SDCL 21-32A-1 states:

---

9.     This Court has addressed the 1986 repeal of SDCL 31-32-11 in relation to the enactment of SDCL 21-32A-1 in only a limited capacity.  *See Bland v. Davison Cnty.*, 507 N.W.2d 80, 82 (S.D. 1993) (Wuest, J., concurring) ("[S]overeign immunity is not applicable in this case . . . [n]or is it an 'out of

(continued . . .)

> To the extent that any public entity, other than the state, participates in a risk sharing pool or purchases liability insurance and to the extent that coverage is afforded thereunder, the public entity shall be deemed to have waived the common law doctrine of sovereign immunity and shall be deemed to have consented to suit in the same manner that any other party may be sued.

[¶63.] By enacting SDCL 21-32A-1 and repealing SDCL 31-32-11, the Legislature signaled its intent to broaden the spectrum of recoverable claims against local governments by allowing causes of action to be brought for breaches of duties beyond the duty in SDCL 31-32-10. Following this change, injured parties could bring actions against a public entity for a breach of existing statutory or common law duties to the extent that the entity participated in a risk sharing pool or purchased liability insurance. For counties and townships, this change was significant because they had many statutory duties concerning road maintenance and repair. However, because the Legislature did not use the same terminology for municipalities, their duties only could have arisen from common law. *Compare*

---

(. . . continued)

repair' case sanctioned by SDCL 31-32-10. Rather, this case falls within the provisions of SDCL 31-12-19 because in purchasing liability insurance, the County has waived sovereign immunity."); *Bickner v. Raymond Twp.*, 2008 S.D. 27, ¶ 9, 747 N.W.2d 668, 671 ("Although we previously held that SDCL 31-32-11 waived sovereign immunity and established a cause of action for a breach under SDCL 31-32-10, this statute was repealed in 1986."). Further, this Court has held that where the State has waived sovereign immunity, the State employees charged with maintaining a highway could nonetheless avail themselves of the defense of sovereign immunity for violating SDCL 31-32-10 because the statute imposed a discretionary duty upon those employees. *See Hansen v. S.D. Dep't of Transp.*, 1998 S.D. 109, ¶¶ 15, 29, 584 N.W.2d 881, 884–88 ("When the state has waived sovereign immunity to the extent of participation in a risk-sharing pool or the purchase of liability insurance, a state employee sued in his official capacity can no longer avail himself of the defense of sovereign immunity except in defense of alleged negligence arising from the performance of a discretionary act.").

SDCL 9-45-1 ("Every municipality *may*" repair roads and streets) (emphasis added); *with* SDCL 31-12-26 ("Each board of county commissioners and county superintendent of highways in organized counties *shall construct, repair, and maintain* all secondary roads within the counties[.]") (emphasis added).

[¶64.] Taken together, this historical context indicates that perhaps *Hohm* overextended the Legislature's intent in determining that municipalities' common law duties were abrogated by SDCL 31-32-10 and its predecessors. *Hohm's* sharp departure from historical principles of common law liability with respect to municipalities continues to impact litigants today, including the plaintiff in this case. Although the City's contention that it owes no duty under SDCL 31-32-10 does not rise to an invocation of sovereign immunity, it is enabled to argue that it owes no duty only because *Hohm* extended the remnants of the immunity framework once applicable to quasi-corporations to municipalities, as well.

[¶65.] In my view, the Legislature's intent is not clear, and the progression of legislative action in this field reasonably lends itself to two opposite conclusions— one where municipalities' common law duties respecting roads were abrogated and one where they remain. Clarification by the Legislature would be beneficial to resolve this question of legislative intent.